

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

> Opinion No. O-1762
> Re: State Highway Department —
>     Insurance contracts.

Your letter of December 5, 1939, addressed to the Attorney General, has been referred to me for reply.

You state the following case for our legal opinion, to-wit:

"The State Highway Department has submitted request in the form of a claim to Seinsheimer Insurance Agency, 1013 U. S. National Bank Building, Galveston, Texas, for invoices as follows:

"11/7 $40,000 Marine Insurance on Hull & Machinery M/F 'Galveston' 220 $880.00

"11/7 $40,000 Marine Insurance on Hull & Machinery M/F 'Jefferson' 220 $880.00

"11/7 $10,000 Marine Insurance on Hull Disbursements M/F 'Galveston' 100 $100.00

"11/7 $10,000 Marine Insurance on Hull Disbursements M/F 'Jefferson' 100 $100.00

"Total . . . . . . . . . . .$ 1960.00"

Article 6812a, R. C. S., provides:

"That the State Highway Department is hereby authorized to acquire by purchase

and/or to construct, maintain, operate and control ferries, out of the Highway Fund of the State of Texas, over and across any bay, arm, channel or salt water lake emptying into the Gulf of Mexico, or any inlet of the Gulf of Mexico, any river or other navigable waters of this State where such ferries connect designated State highways, and which may be made self-liquidating or partially self-liquidating by the charging of tolls for the use thereof."

The insurance policies, the premiums on which gave rise to your inquiry, were issued upon two ferry boats, connecting a State highway within the meaning of the above statute in the vicinity of Galveston Bay.

These policies appear to cover various risks, such as fire and liability, the exact nature and classification of which we are not called upon to discuss.

There is no specific appropriation made for the purpose of paying insurance premiums such as those involved in the present inquiry, so that we are called upon to consider whether or not such insurance could be considered as a necessary incident to the power and authority of the State Highway Commission to acquire and operate the ferry under the statute above quoted. If the items are thus incidental to the major power conferred by the Act, then they possibly could be paid from the miscellaneous or contingent item of appropriation for that department. We say "possibly" in this connection because there may be grave doubt as to the right of the Legislature to appropriate money in payment for services or goods not authorized by any existing law.

It is well settled that a law which confers a power, or imposes a duty upon an officer or board, carries with it by implication the authority to do such things as are reasonably necessary to carry into effect the power granted or the duty imposed. Thus, power to do certain work, or to accomplish a certain result, which cannot otherwise be accomplished, implies the authority to employ such agents as may be reasonably necessary to accomplish the work or purpose specified, and to engage them for such length of time as is reasonably necessary. (See 34 Tex. Jur. p. 444, Sec. 68, and the cases cited for the text).

It cannot be said, we think, that it is necessary to carry any sort of insurance to enable the State through its State Highway Department to operate the ferry in question. This is especially true since the State is amply solvent and able to respond to any just, legal claim that may be presented, and, apparently, amply willing to grant leave to those entitled thereto to sue the State in any court of competent jurisdiction and establish their claims. Fire and liability insurance in such a situation may be desirable, and to carry them may be good business judgment, but these considerations are addressed to the sound discretion of the State itself to be exercised in the usual legislative manner. In the absence of such express legislative intention, it cannot be held that the power to carry property or industrial insurance is a necessary incident to the power to operate the ferry.

Phases of this question have been before this department for decision.

In opinion No. O-201 it was ruled that directors of public health districts had no authority to insure State property against fire in their respective offices, and to pay the premiums therefor out of their local contingent funds.

The opinion cites as authority Senate Concurrent Resolution No. 3 passed in the second called session of the 57th Legislature, in which it is provided.

"Hereafter it shall be and is the fixed policy of this State and the State shall carry its own insurance upon State buildings and contents, and that no insurance policy shall be taken out upon any of the public buildings and contents, and that no insurance policies shall be taken out upon any of the public buildings of this State, nor upon the contents thereof, and the State Board of Control and all other boards having charge of buildings of the State and the contents of such buildings, are hereby instructed not to have such buildings nor property insured notwithstanding there may be items in the appropriation bill authorizing the expenditures of money for the payment of insurance premiums."

The opinion overru..... the "opinion of, the Hon. W. W. Cave written October 5, 1921, and found in book 56 page 242, opinion No. 2392, and all subsequent concurring opinions." The opinion was written by Mr. Morris Hodges, Assistant Attorney General, and approved by the Attorney General.

Thereafter, in opinion No. 0-184 the department in another opinion written by Mr. Hodges, and likewise approved by Attorney General Mann, in reply to a request for an opinion with reference to authority to issue a warrant in payment of a claim drawn against "a specific appropriation" for the payment of insurance premiums, "whether it be for fire insurance, theft, collision, or any otherform of insurance," cited with approval opinion No. 0-201 and added:

"We see no reason to differentiate the ruling of that opinion with the facts presented to us in your letter. We are enclosing a copy of opinion No. 0-201 above referred to, and we believe that the law as expressed in that opinion is applicable to the facts you relate."

It is further stated in the opinion:

"We do hold that in the absence of a specific appropriation for that purpose, you are not authorized to issue warrants for the payment of insurance premiums."

A letter opinion written by Mr. T. S. Christopher, Assistant Attorney General, of date October 1, 1934, addressed to the State Highway Department, attention Mr. T. H. Webb, is in apparent and possibly real conflict with the views here expressed. The opinion answered the following question:

"Will you please advise us at your earliest convenience if the State Highway Department may pay the premium for fire insurance protecting cargo carried; public liability insurance covering loss of life or damage to property; and protection against collision with other craft in either of the two following ways. * * *"

The question arose out of the operation of the ferry involved in the present inquiry. Mr. Christopher

answered that the Highway department would be authorized to protect itself by insurance from damages resulting to passengers or cargo in the operation of the ferry. If this opinion be in conflict with opinion No. O-801, hereinabove referred to, it has been overruled by the express language of that opinion. Moreover, the letter opinion of Mr. Christopher is not in keeping with the declared policy of this State with respect to insurance generally, and if it has not been overruled it should now be overruled.

As authority, Mr. Christopher cites State v. Elliott, 212 S. W. 695, and quotes therefrom as follows:

"When a State embarks in an enterprise which is usually carried on by individual persons or companies it voluntarily waives its sovereign character and is subject to like regulations."

The quotation pronounces a correct rule of law, but it is no authority for the holding based upon it. It is true when a state voluntarily comes into the courthouse she must wear citizens clothes. In other words, it voluntarily waives its sovereign character insofar as being immune to suit is concerned, and in the litigation that follows it is subject to precisely the same procedure, and likewise is governed by precisely the same rules of substantive law involved in that particular procedure as apply to other parties. It does not follow by any means, however, that the engaging in a proprietary business by the State or even the voluntary surrender of its immunity from suits that it in any wise waives its right to exercise its own judgment with respect to other matters of proprietary interest, such as the wisdom of carrying insurance upon its property or against its hazards or risks. That is a matter of governmental policy to be exercised the one way or the other at the government's option.

You are therefore advised that in the opinion of this department you are not authorized to approve

Hon. Geo. H. Sheppard, Page 6

these items for payment.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Ooie Speer
Ooie Speer
Assistant

OS:MR

APPROVED JAN. 20, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE